UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| TRESSIA WALLACE, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:15-CV-01811 JAR |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Tressia Wallace's ("Wallace") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.

### I. Background

Plaintiff Tressia Wallace filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, on May 17, 2012 (Tr. 272-273.) The Social Security Administration denied Wallace's claim on September 5, 2012 (Tr. 212-220.) Wallace filed a timely request for a hearing before an administrative law judge ("ALJ") (Tr. 230-231.) Following an April 24, 2014 hearing (Tr. 165-188), the ALJ issued a written decision on July 7, 2014, upholding the denial of benefits (Tr. 189-211.) Wallace requested review of the ALJ's decision by the Appeals Council (Tr. 161.) On November 6, 2015, the Appeals Council

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

denied her request for review (Tr. 1-7.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Wallace filed this appeal on December 9, 2015 (Doc. No. 1.) The Commissioner filed an Answer on March 3, 2016 (Doc. No. 14.) Wallace filed a Brief in Support of her Complaint (Doc. No. 24), and the Commissioner filed a brief in support of the Answer (Doc. No. 29.) Wallace has not filed a reply brief, and time for her to do so has expired.

## II. Facts

The Commissioner attached a statement of facts to her Brief in Support of the Answer; Wallace did not respond to the Commissioner's statement of facts or submitted her own statement of facts. The Court will therefore adopt the Commissioner's Statement of Facts (Doc. No. 29-1), as the Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job

vacancy exists for her, or whether she would be hired if she applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to

3

her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that she is disabled. *Brantley*, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

4

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

### IV. The ALJ's Decision

The ALJ determined that Wallace met the insured status requirements of the Social Security Act through December 31, 2013, and that she had not engaged in substantial gainful activity since July 13, 2009, the alleged onset date of disability (Tr. 170.) The ALJ determined that Wallace had the following severe impairments: disorders of the spine, status post right peroneal tenosynovectomy times two, status post right retrocalcaneal bursectomy, status post right knee arthroscopy and synovectomy, right knee degenerative joint disease, diabetes mellitus, and obesity (Tr. 170-171.) The ALJ further found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (Tr. 171.)

After considering the entire record, the ALJ determined that Wallace had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she would be unable to climb ropes, ladders, and scaffolding; only frequently would be able to stoop,

5

kneel, crouch, and crawl; only occasionally be able to push and pull with the right foot; and must always avoid the hazards of heights (Tr. 171-180).

**IV. Discussion**

In this appeal, Wallace raises three arguments: (1) that the ALJ failed to properly evaluate her pain complaints; (2) that the ALJ improperly discounted her credibility; and (3) that the ALJ's RFC determination is not supported by substantial evidence.

A. <u>The ALJ's Evaluation of Wallace's Pain Complaints and Credibility Determination</u>

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Wallace's credibility is essential to the determination of her other arguments. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible."); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2002). In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. *Id.* (citing *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995)). The Court will uphold an ALJ's

6

credibility findings, so long as they are adequately explained and supported. *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

Wallace argues that the ALJ failed to discuss all of the *Polaski* factors; however, the Court concludes that the ALJ adequately acknowledged and discussed the factors before making a credibility determination. *See Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (an ALJ need not methodically discuss each *Polaski* factor if the factors are acknowledged and examined prior to making a credibility determination). The ALJ discredited Wallace's allegations for several reasons, including a lack of objective evidence to support her subjective complaints of pain, breaks in treatment for her allegedly disabling conditions, and her limited past earnings. The Court will address each of these reasons in turn.

1. Lack of Objective Evidence to Support Wallace's Pain Complaints

The ALJ concluded that Wallace's knee pain, back pain, and ankle pain caused Wallace limitations to some extent, but the ALJ factored those limitations into her RFC. In so doing, the ALJ considered the objective medical evidence at length. As to Wallace's allegation of disabling ankle pain, the ALJ noted that examinations of Wallace's ankle in May 2009 and June 2009 revealed tenderness, but her ankle "[was] otherwise largely unremarkable." (Tr. 177, 592.) In August 2011, a physical therapist reported that Wallace was able to bend, reach overhead, and reach behind without restriction, and that Wallace reported independence with her self-care and light activities of daily living (Tr. 608, 610.) Moreover, in January 2010, a physician described Wallace's ankle as "clinically stable." (Tr. 1090.) In December 2013, a physician observed that her right ankle displayed normal range of motion and muscle strength (Tr. 1159.) Notably, in November 2013, Dr. Krause, a board certified orthopedic surgeon, opined that Wallace did not

require further treatment on her lower right extremity, and that he saw "no reason [Wallace] cannot be working full duty without restrictions." (Tr. 1027.)

With regard to Wallace's claim of disabling knee pain, the ALJ correctly noted that the record was inconsistent with her subjective complaints of pain. On multiple occasions, she had complained of right knee pain, but her treating physicians had noted only "mild" or "very mild" arthritic changes to her right knee and with 135 to 140 degrees of flexion (Tr. 1124-25, 1128.)

Moreover, as to Wallace's claim of disability due to spine disorders, the ALJ similarly found that the objective medical evidence did not support a disability finding. The ALJ referenced numerous computerized tomography (CT) and magnetic resonance imaging (MRI) images which revealed spinal abnormalities the ALJ considered sufficient to support a finding of some level of limitation, but not disability. More specifically, a CT scan of Wallace's spine taken in or around October 2011 was "unremarkable," showing no fractures, subluxation, or disc space narrowing; the ALJ determined that it was supportive of a finding of some limitation. An MRI taken in February 2012 showed intact disc space and vertebral body heights, with no evidence of fracture, spondylolysis, or spondylolisthesis. An April 30, 2012 MRI of Wallace's lumbar spine demonstrated degenerative changes; the ALJ concluded that these changes also were not of sufficient severity to warrant a finding of disability. In light of the absence of objective medical evidence to support Wallace's pain complaints as well as inconsistencies between her statements and the evidence of record as a whole, the Court concludes that substantial evidence supports the ALJ's decision to discount her subjective complaints of disabling pain. *See Polaski*, 739 F.2d at 1322 (an ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole).

2. Breaks in Treatment

8

The Court also concludes that the ALJ did not err by considering Wallace's breaks in pursuing treatment in assessing her credibility. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) ("An ALJ may discount a claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment.") (citation omitted); *see also Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged"); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). The ALJ noted that there was no evidence that Wallace had sought treatment for her right ankle after her second surgery, which suggested "either no or tolerable symptomatology." (Tr. 178.) Also, Wallace first underwent surgery on her right ankle in March 2010, but there is no record of any follow-up treatment on her ankle until September 2010, or six months later. After that appointment, Wallace's next appointment appeared to be in March and April 2011, when she complained to her physician about pain, tenderness, and swelling. Wallace did not appear to go to another follow-up appointment until October 2011. There are similar breaks in Wallace's treatments for her knee, as the record shows she presented with knee pain in September 2010, but did not follow up with right knee treatments until March 2011. Thus, the Court finds that the ALJ properly considered these breaks in Wallace's treatment in assessing Wallace's credibility as to her subjective complaints of pain. *See Casey*, 503 F.3d at 693; *Edwards*, 314 F.3d at 967.

3. Wallace's Past Earnings

The ALJ also did not err by considering Wallace's work history in assessing her credibility. A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. *See Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980). For the same reason, an ALJ may discount a claimant's credibility

9

based on her poor work record. *See Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005) (ALJ may properly consider claimant had not worked for several years before filing SSI application); *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir. 1993).

Here, the ALJ properly concluded that Wallace's poor work record detracted from her credibility. Wallace reported earnings of $337.29 in 1999; $1,275.75 in 2000; $10,250.19 in 2001; $2,281.70 in 2002; and $0 in 2005 (Tr. 282.) Wallace claims that her low earnings can be attributed to her working in minimum wage jobs. In response, the Commissioner contends that Wallace earned considerably more than minimum wage in several jobs, yet reported low earnings in many other years. The Court is not persuaded by Wallace's contention that her minimal past earnings reflect only low wages, not minimal employment. Although Wallace reported substantially higher earnings in 1998, 2006, and 2007, her minimal income in other years evidences an inconsistent work history. Wallace's reported earnings in several years are so low that they cannot be fully explained by the fact she was working in a minimum wage job. The ALJ thus did not err in discounting Wallace's credibility based on her history of low earnings.

For these reasons, the Court concludes that the ALJ's determination as to Wallace's credibility is supported by substantial evidence in the record. *See Krogmeier*, 294 F.3d at 1022 (substantial-evidence standard of review); *see also Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (the ALJ is in the best position to observe a claimant's hearing testimony and to asses her credibility). The ALJ properly considered the absence of objective medical evidence to support Wallace's allegations of disabling pain, and permissibly concluded that her subjective complaints were inconsistent with the record as a whole.

B. The ALJ's RFC's Determination

Wallace also argues that the ALJ's RFC is not supported by substantial evidence, as it "is not based on any physician's opinion, and instead [the ALJ's] interpretation of the raw medical evidence of record from [Wallace's] treating physicians." (Doc. No. 24 at 9.) Wallace further contends that the ALJ did not adequately explain the conclusion that she is able to perform light work, a conclusion she argues was not based upon substantial evidence in the record.

The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (RFC must be determined based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations, and supported by some medical evidence). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (internal quotations and citations omitted).

"[T]he ALJ does not have to rely entirely on a doctor's opinion in formulating a claimant's RFC, nor is he limited to choosing an RFC based on one of the medical opinions of record." *Harris v. Astrue*, No. 12-5031-CV-SW-DGK-SSA, 2013 WL 1628412, at *3 (W.D. Mo. Apr. 16, 2013) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo*, 682 F.3d at 1288. However, the RFC must be supported by at least some medical evidence, such as treatment records, laboratory results, or other objective testing. See Social Security Ruling 96-8p.

Here, the ALJ properly considered the medical evidence of record and Wallace's credibility in determining the RFC. Specifically, the ALJ extensively considered and summarized the voluminous medical evidence in the record, and discussed how and why the medical records supported his conclusions as to Wallace's ability to perform various work-related tasks. *See Steed*, 524 F.3d at 876; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). Moreover, the ALJ did not err by declining to rely on either of the medical opinions offered in this case, as the ALJ had discredited the opinion of Richard Hulsey and Dr. James Morgan's opinion related only to Wallace's mental condition. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians."). The Court thus concludes that the ALJ's RFC determination is supported by substantial evidence in the record. *See Krogmeier*, 294 F.3d at 1022.

### VI. Conclusion

For the foregoing reasons, the Court finds there is substantial evidence in the record to support the ALJ's decision. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 31st day of March, 2017.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE